UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00643-GNS

WINONA ASHBY                                                    PLAINTIFF

v.

AMSCAN, INC d/b/a/
DECO PAPER PRODUCTS                                          DEFENDANT

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant's Motion for Summary Judgment (DN 20) and Plaintiff's Cross-Motion for Summary Judgment (DN 25).  For the following reasons, Defendant's Motion for Summary Judgment (DN 20) is **GRANTED IN PART** and **DENIED IN PART**, and Plaintiff's Cross-Motion for Summary Judgment (DN 25) is **DENIED**.

## I.        <u>BACKGROUND</u>

Plaintiff Winona Ashby ("Ashby") began her employment as a machine operator with Defendant Amscan, Inc. d/b/a Deco Paper Products ("Amscan") on April 23, 2010.  (Pl.'s Cross Mot. Summ. J. Ex 1, ¶¶ 8-9, DN 25-2 [hereinafter Def.'s Answer to Interrog.]).   Ashby's employment was terminated on April 29, 2015, when she returned to Amscan after taking a leave of absence pursuant to the Family and Medical Leave Act ("FMLA").  (Ashby Dep. 43:9-44:9, July 25, 2016, DN 25-3).  Amscan's stated reason for Ashby's termination was that she exceeded the allotted twelve weeks of FMLA leave time by four days.  (Pl.'s Cross Mot. Summ. J. Ex 8, DN 25-9 [hereinafter Termination Letter]).  This current action stems from the termination.

Ashby utilized FMLA leave on two occasions during her last year of employment with Amscan.  The first instance began on May 30, 2014, when Ashby submitted a Certification of Healthcare Provider for Employee's Serious Health Condition ("FMLA Certification") to Amscan's Human Resource's manager, Shannon Robinette, verifying her need for medical leave due to depression and anxiety (" "2014 FMLA leave").  (Pl.'s Cross Mot. Summ. J. Ex 3, DN 25-4 [hereinafter FMLA Certification I]).  Ashby's son had recently been diagnosed with AIDS, and Ashby used the 2014 FMLA leave to care for her son and to seek medical treatment for her own mental health resulting from her son's diagnosis.  (Ashby Dep. 30:18-31:14).  Ashby initially used about three weeks of leave and subsequently used FMLA leave intermittently.  (Ashby Dep. 31:18-25).

Ashby's second FMLA leave began on March 6, 2015, when she fell at her home and fractured her ankle ("2015 FMLA leave").  (Ashby Dep. 36:6-38:11).  Ashby's physician completed the FMLA Certification and delivered it to Amscan.  (Pl.'s Cross Mot. Summ J. Ex. 6, DN 25-7 [hereinafter FMLA Certification II]).  Amscan did not provide Ashby with any information regarding her FMLA Certification, including notice of the number of FMLA days that she had used at that point.  (Ashby Dep. 55:14-22).  The Certification required a follow-up in four weeks, on April 13, 2015, to determine Ashby's readiness to return to work.  (FMLA Certification II).  After four weeks, Ashby's doctor determined that Ashby needed to stay off her ankle for two more weeks for the injury to heal completely, so Ashby requested and Amscan granted two additional weeks off.  (Ashby Dep. 38:22-39:2, 39:24-40:1; Def.'s Mot. Summ. J. Ex. 6, DN 20-6 [hereinafter Return to Work Note]).  After the two weeks, Ashby was given full release to return to work with no restrictions.  (Return to Work Note).

When Ashby returned to work immediately upon release by her doctor on April 29, 2015, she was informed by two Human Resources employees that she was terminated for taking more FMLA time off than was allowed.  (Termination Letter; Ashby Dep. 43:9-21).  Amscan's FMLA policy allows an employee to take up to "twelve workweeks of leave during a rolling twelve month period",[1] and Ashby had exceeded the allotted twelve weeks of leave by four days. (Def.'s Mot. Summ. J. Ex. 3, at 1, DN 25-5; Def.'s Mot. Summ. J. Ex. 4, DN 20-4 [hereinafter FMLA Calculations]).  At no time during her 2015 FMLA leave did Amscan notify Ashby how much available FMLA leave she had or advise her that the final two weeks off from work would exceed her FMLA leave.  Amscan did, however, provide Ashby with an "absenteeism count" identifying the number of hours of FMLA leave Ashby had used in the prior year on February 20, 2015, before her leave request for the broken ankle.  (Ashby Dep. 55:14-22; Pl.'s Cross Mot. Summ. J. Ex. 5, DN 25-6 [hereinafter FMLA Absenteeism Count]).

Ashby filed this action in Jefferson Circuit Court against Amscan alleging that Amscan discriminated against her on the basis of her disability (her broken ankle), and that Amscan failed to accommodate her disability in violation of the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344.  (Notice of Removal Ex. 2, ¶¶ 20-26, DN 1-2 ([hereinafter Compl.]).  In addition, Ashby asserted FMLA interference and retaliation claims.  (Compl. ¶¶ 27-37).  Amscan removed the action to this Court on July 29, 2015.  (Notice of Removal, DN 1).  Subsequently, Amscan moved for summary judgment of all claims, and Ashby also moved for summary judgment. (Def.'s Mot. Summ. J., DN 20; Pl.'s Cross Mot. Summ. J., DN 25).  This matter is now ripe for adjudication.

---

[1] The FMLA permits employers to elect to calculate FMLA leave on a rolling method, and "[t]he 'rolling' method calculates an employee's leave year 'backward from the date an employee uses any FMLA leave.'"  *Thom v. Am. Standard, Inc.*, 666 F.3d 968, 973 (6th Cir. 2012) (quoting 29 C.F.R. § 825.200(b)).

## II.     JURISDICTION

This Court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

## III.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is no genuine issue of material fact when "looking to the record as a whole, a reasonable mind could come to only one conclusion . . . ."  *Mickler v. Nimishillen & Tuscarawas Ry. Co*., 13 F.3d 184, 186 (6th Cir. 1993) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)).  "When moving for summary judgment the movant has the initial burden of showing the absence of a genuine dispute as to a material fact." *Automated Sols. Corp. v. Paragon Data Sys., Inc*., 756 F.3d 504, 520 (6th Cir. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "The burden then shifts to the nonmovant, who must put forth enough evidence to show that there exists 'a genuine issue for trial.'"  *Id*. (citing *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004)).

While the Court views the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show the existence of some "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) (citations omitted).  Rather, the non-moving party must present specific facts proving that a genuine factual issue exists by "citing to particular parts of the materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).  "The mere existence of a scintilla of evidence in support of the [non-

moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

## IV.   DISCUSSION

### A.   KCRA Claims

Plaintiff asserts two separate claims under the KCRA.   She alleges that Amscan discriminated against her because of her disability and that Amscan failed to reasonably accommodate her disability.

#### 1.   *Disability-Discrimination Claims*

Ashby's disability-discrimination claims are brought under the KCRA. Because the KCRA mirrors the language of the ADA, courts interpret the KCRA consistent with the ADA.[2]

---

[2] The parties are in disagreement over the application of the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553 (effective Jan. 1, 2009), which was adopted by Congress in 2011 and broadened the definition of disability.   As this Court has previously explained:

> The Kentucky Civil Rights Act (KCRA), Ky. Rev. Stat. § 344.010 et seq., does part company with the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., in a few significant respects.   In 2008, Congress adopted the ADA Amendments Act of 2008 . . . , which broadened the definition of "disability" under the ADA.   Pursuant to Congress's instruction, the Equal Employment Opportunity Commission (EEOC) amended its corresponding regulations and interpretive guidance to implement the ADAAA in 2011.   *See* Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 76 Fed. Reg. 16,978 (March 25, 2011) (codified at 29 C.F.R. pt. 1630).

> The Court's research has revealed no published Kentucky cases addressing how the ADAAA affects, if at all, claims for disability discrimination brought under the KCRA.   Federal courts continue to interpret the KCRA consistent with pre-ADAAA jurisprudence. *See Breen v. Infiltrator Sys.*, 417 F. App'x 483, 486 (6th Cir. 2011); *Darby v. Gordon Food Servs., Inc.*, No. 3:11-CV-00646-DJH, 2015 WL 3622529, at *5 n.2 (W.D. Ky. June 8, 2015); *Dickerson v. City of Georgetown*, No. 5:14-CV-39-JHM, 2015 WL 2401190, at *3 n.2 (E.D. Ky. May 20, 2015); *Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 731 (W.D. Ky. 2013); *Azzam v. Baptist Healthcare Affiliates, Inc.*, 855 F. Supp. 2d 653, 658 n.2 (W.D.

*See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). "The KCRA makes it unlawful for an employer to discriminate against an otherwise qualified individual on the basis of a disability." *Laferty*, 186 F. Supp. 3d at 708 (citing KRS 344.040(1)(a)). To state a prima facie case, the plaintiff must first "show that [she] is disabled . . . ." *Id.* (citing *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 101 (Ky. App. 2000)). A person is "disabled" if she suffers "a physical or mental impairment that substantially limits one or more of the major life activities of such individual . . . ." *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 n.5 (6th Cir. 2004) (quoting 42 U.S.C. § 12102(2)); *see also Hallahan v. Courier-Journal*, 138 S.W.3d 699, 707 (Ky. App. 2004). The non-exhaustive list of "major life activities" includes "walking," "standing," and "working." 42 U.S.C. § 12102(2)(A). Ashby claims that she is disabled due to the fractures in her right foot and ankle. For Ashby to survive summary judgment, she must show that her physical impairment substantially limited her major life activities.

In determining whether an individual is substantially limited in a major life activity, courts are to consider: "(i) the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009) (citing 29 C.F.R. § 1630.2(j)). First, neither the nature nor severity of Ashby's fracture suggests that she is disabled. Ashby's fractured foot

---

Ky. 2012); *Webb v. Humana Inc.*, 819 F. Supp. 2d 641, 645 n.3 (W.D. Ky. 2011). Until such time as the Kentucky Supreme Court or General Assembly speaks on this issue, the Court will take that approach.

*Laferty v. United Parcel Serv., Inc.*, 186 F. Supp. 3d 702, 707 n.3 (W.D. Ky. 2016) (internal citation omitted). This Court will continue to abide by this holding and apply pre-ADAAA jurisprudence in determining if Ashby was suffering from a disability as to warrant relief under the KCRA.

appears to have been an ordinary break.  The injury healed normally and she was cleared to go back to work within eight weeks of the injury, at which time Ashby's doctor cleared her to go back to work without restrictions.  Ashby currently has no medical restrictions from walking, standing, or working; thus, the fractures were merely a temporary injury.  *See* 29 C.F.R. app. § 1630.2(j) (2003). ("[T]emporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities.").  Because there was no permanent or long-term impact resulting from the fractures, Ashby's broken foot does not qualify as a disability.

Ashby's fractured foot and ankle was not a physical impairment that substantially limited one or more major life activities, and Ashby has failed to establish that she had a "disability" under the ADA.  A plethora of case law establishes that an ordinary broken bone will not amount to an impairment that "substantially limits one or more of the major life activities . . . ." *Smith v. Reg'l Plan Ass'n*, No. 10 CIV. 5857 BSJ KNF, 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011) (citing 42 U.S.C. § 12102(1)); *see also Clark v. Boyd Tunica, Inc.*, No. 314-CV-00204-MPM-JMV, 2016 WL 853529, at *5 (N.D. Miss. Mar. 1, 2016) (holding that broken foot that healed in the normal course did not qualify as a disability); *Kramer v. K & S Assocs.*, 942 F. Supp. 444, 446 (E.D. Mo. 1996) (stating that when the plaintiff's broken leg "healed completely in six months with little or no long term effects," the injury did not qualify as a disability under the ADA); *Ogborn v. United Food & Commercial Workers Union, Local No. 881*, 305 F.3d 763, 767 (7th Cir. 2002) (noting that "episodic impairments such as broken limbs and appendicitis are not disabilities . . . ." (citations omitted)); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (concluding that broken bone in hand was not a disability

under the ADA).  Thus, Ashby has not demonstrated that she was suffering from an actual disability as defined by the ADA.

Moreover, the record contains no evidence indicating that Amscan regarded Ashby as having a disability.  Further, the "regarded as" prong of the disability definition does not apply to "transitory and minor" impairments.  42 U.S.C. § 12102(3)(B).  Under the ADA, "[a] transitory impairment is an impairment with an actual or expected duration of 6 months or less."  *Id*.  This definition precisely describes Ashby's broken bones which healed in less than two months.  Therefore, Ashby's disability-discrimination claims fail as a matter of law.  Amscan's motion for summary judgment as to the disability-discrimination claim under the KCRA is granted and Ashby's motion as to this claim is denied.

### 2.   *Failure to Accommodate Claim*

To establish failure to accommodate under the ADA, Plaintiff must show that:  "(1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she employer knew or had reason to know about she disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation."  *Johnson v. Cleveland City Sch. Dist*., 443 F. App'x 974, 982-83 (6th Cir. 2011) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)).  As discussed above, Ashby was not disabled under the ADA.  Accordingly, Ashby's failure-to-accommodate claim fails as a matter of law and summary judgment is granted for Amscan and denied for Ashby as to this claim.

### B.   **FMLA Claims**

Ashby has also asserted two separate claims under the FMLA.  She alleges that Amscan retaliated against her for taking FMLA leave and interfered with her rights under the FMLA.

### 1.    *Retaliation Claim*

Courts analyze FMLA retaliation claims based on circumstantial evidence under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) ("This court applies the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green* to retaliation claims under the FMLA."   (internal citation omitted) (citations omitted)).   "Under the framework, once an employee establishes a prima facie FMLA claim, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse action."  *Alexander v. Kellogg USA, Inc.*, No. 16-5471, 2017 WL 36135, at *3 (6th Cir. Jan. 4, 2017) (citing *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012)).   If the employer meets its burden, "the burden again shifts to the employee to show that the reason is a pretext for unlawful discrimination."  *Id.* (citing *Donald*, 667 F.3d at 761-62).

### a.    **Prima Facie Case**

To establish a FMLA retaliation claim, Ashby must show that:  (1) she was engaged in a protected activity; (2) Amscan knew that she was exercising her rights under the FMLA; (3) after learning of Ashby's exercise of FMLA rights, Amscan took an employment action adverse to her; and (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Donald*, 667 F.3d at 761.  There is no question that Ashby engaged in a protected activity and Amscan knew she was engaging in such activity when she exercised her right to leave under the FMLA.  Moreover, Ashby suffered an adverse employment action when Amscan terminated her employment.  At issue is whether there is a causal connection between the protected FMLA activity and the termination.

"With respect to causal connection, the plaintiff must show that an employee's use of FMLA leave was a 'significant factor' motivating the retaliatory action." *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 675 (S.D. Ohio 2005) (citing *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190, 199 (6th Cir. 1986)). "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 283 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)).

Amscan contends that Ashby's termination was not in retaliation for her taking FMLA leave, but for exceeding the number of days allowable under the FMLA. Ashby avers that her termination was in retaliation for her exercise of her FMLA rights, as evidenced by the temporal proximity of the leave to her termination and by Amscan's actions intentionally misleading Ashby regarding her request for two further weeks of leave.

The Sixth Circuit has held that temporal proximity can be sufficient in some situations to establish causation. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (finding that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support that inference . . . ."); *see also Brown v. Humana Ins. Co.*, 942 F. Supp. 2d 723, 736 (W.D. Ky. 2013) ("[M]ore recently published Sixth Circuit cases seem to suggest that temporal proximity alone is sufficient where the temporal proximity is significant, and this is likely the prevailing standard in the Sixth Circuit." (citing *Mickey*, 516 F.3d at 525; *Blosser v. AK Steel Corp.*, 520 F. App'x 359, 363-64 (6th Cir. 2013)). With regard to the proximity that will be found "significant," the Sixth Circuit has noted that cases which have permitted an inference of a causal connection based on temporal proximity alone "have all been shorter

10

periods of time, usually less than six months." *Nguyen*, 229 F.3d at 566 (internal quotation marks omitted) (quoting *Parnell v. West*, No. 95-2131, 1997 WL 271751 at *3 (6th Cir. 1997)).

Ashby's causation argument raises the question of how to measure temporal proximity. The Sixth Circuit's precedent regarding measurement of temporal proximity in FMLA retaliation claims is somewhat conflicting. *See Basch v. Knoll, Inc.*, 619 F. App'x 457, 460 (6th Cir. 2015) (explaining that temporal proximity should be measured from "when the employer learn[ed] of a protected activity . . . ." (internal quotation marks omitted) (quoting *Mickey*, 516 F.3d at 525)); *Mickey*, 516 F.3d at 525 ("Where an adverse employment action occurs very close in time after an employer *learns of a protected activity*, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." (emphasis added)). *Compare Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 410 (6th Cir. 2014) (noting that temporal proximity is to be measured "from the date FMLA leave expired, not just when the employee first requested it, for the purposes of measuring temporal proximity." (citing *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011))). This Court in *McMasters v. Hendrickson USA, LLC*, No. 3:14-CV-329-CRS, 2016 WL 5796908 (W.D. Ky. Sept. 30, 2016), recently held that "[t]he yardstick for retaliation for the exercise of FMLA rights is the time between [the employer] learning of [the plaintiff's] exercise of FMLA rights and the purported retaliatory act in response." *Id.* at *5. Considering the previous holdings of this Court, temporal proximity will be measured here from the time Amscan learned that Ashby intended to exercise her rights under the FMLA, not on the date her FMLA leave expired.[3]

---

[3] Amscan argues that Ashby effectively disclaimed her retaliation claim in relation to her second FMLA through her deposition testimony. (Def.'s Reply Cross Mot. Summ. J. 10, DN 26 [Def.'s Reply]). Ashby testified:

Plaintiff has not established causation between her 2014 FMLA leave and her termination in April 2015.  A period of eleven months is simply too long of a span between these two events. *See Martin v. Gen. Elec. Co.*, 187 F. App'x 553, 561 (6th Cir. 2006) ("The eleven-month interval between Martin's filing of her EEOC complaint and the adverse employment action is not short enough to establish by itself that there is a causal connection.").  Although there is not a fixed amount of time for finding temporal proximity, the Sixth Circuit "has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity." *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) (citations omitted).  A period of two to three months has been held to be sufficient evidence to establish prima facie causation. *See Singfield v. Akron Metro. Hous. Auth*., 389 F.3d 555, 563 (6th Cir. 2004) (holding three month period between exercise of FMLA rights and termination was sufficient to establish causation); *Bryson v. Regis Corp*., 498 F.3d 561, 571 (6th Cir. 2007) (holding that prima facie causation was established by the three months between the plaintiff's request for FMLA leave and her termination on the day she was scheduled to return to

---

> Q:   Well, let me show you your complaint. Paragraph 34 of your complaint, go ahead and read it.
>
> A.   "On various occasions Ashby provided notice to Amscan that she or her son were suffering from a serious health condition and needed time off to recover or care for her son."
>
> Q.   . . . Are you saying that Amscan retaliated against you for taking the Family Medical Leave time to care for yourself or your son, that time that relates back to May, 2014 to February, 2015 time period?
>
> A.   Yes.
>
> Q.   Any other reasons that you believe Amscan retaliated against you?
>
> A.   No.

(Ashby Dep. 51:11-23). Amscan asserts Ashby's retaliation claim relates only to her first FMLA leave based on this testimony.  Ashby did not, however, unequivocally disclaim her retaliation cause of action related to the second leave period, and the Court will not treat this testimony as waiving her retaliation claims as to the 2015 FMLA leave.

12

work); *Judge*, 592 F. App'x at 409 (holding that a period of two months established prima facie causation); *Clark*, 424 F. App'x at 473 ("[T]he court correctly credited the temporal proximity [of two months] [between] [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters.").

The lapse between the 2015 FMLA leave request on March 6, 2015, and the termination on April 29, 2015, however, is a horse of a different color. The Court finds the period of less than eight weeks between Ashby's submission of her doctor's certification for her broken foot/ankle in early March 2015 and her termination in late April 2015 is sufficient to support a finding of on the element of causation. Thus, Ashby has established a prima facie case of retaliation.

**b.    Legitimate, Non-discriminatory Reason for Termination**

Finding that Ashby has established a prima facie case for retaliation with respect to her March 2015 FMLA leave request, the burden of proof switches to Amscan to provide a legitimate, non-discriminatory reason for the termination. *See Donald*, 667 F.3d at 761. Amscan asserts as its reason for termination that Ashby exhausted her FMLA leave and then failed to return to work in violation of its attendance policy. *See Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978) ("[T]he employer's burden is satisfied if [it] simply explains what [it] has done or produc[es] evidence of legitimate nondiscriminatory reasons." (fourth alteration in original) (internal quotation marks omitted) (citation omitted)). Failure to return to work after all leave has been used is a legitimate, nondiscriminatory basis for Amscan's termination of Ashby. *See Coker v. McFaul*, 247 F. App'x 609, 620 (6th Cir. 2007) ("Once an employee exceeds his twelve work weeks (or sixty workdays) of FMLA leave, additional leave in the twelve month period is not protected by the FMLA, and termination of the employee will

not violate the FMLA."  (internal quotation marks omitted) (citation omitted)); *McClelland v. CommunityCare HMO, Inc.*, 503 F. App'x 655, 659 (10th Cir. 2012) (affirming summary judgment on a retaliation claim because the employee's failure to return to work after exhausting her FMLA leave constituted a legitimate, nondiscriminatory reason for her termination; *Hearst v. Progressive Foam Techs., Inc.*, 682 F. Supp. 2d 955, 968-69 (E.D. Ark. 2010) (granting summary judgment on the plaintiff's retaliation claim because the employee had exhausted his FMLA leave and failed to follow his employer's leave of absence policy).  Thus, Amscan has articulated a non-discriminatory basis for terminating Ashby.

### c.    Pretext

The burden next swings back to Ashby to show that Amscan's reason for firing Ashby was a mere pretext for unlawful retaliation.  *Donald*, 667 F.3d at 761-62.  While temporal proximity alone will suffice to show prima facie causation, Amscan argues that Ashby's claim fails because she cannot establish pretext. (Def.'s Mot. Summ. J. 12).  The Court agrees.  Sixth Circuit precedent has made clear that "temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1397-98 (10th Cir. 1997)).  Ashby has pointed to no other evidence in the record to support a finding that Amscan's reason for terminating Ashby was pretextual[4], thus, Ashby has not proven her retaliation claim.  Therefore, summary judgment is granted for Amscan and denied for Ashby.

---

[4] Ashby argues that her retaliation claim does not stand on temporal proximity alone, but also on "the fact that Amscan intentionally mislead Ashby as to the date Amscan actually expected her to return to work" as evidence of Amscan's intent to retaliate against her for taking her FMLA leave.  Amscan contends that Ashby has "produced no witness or document to support" the contention that Amscan's intent was to mislead Ashby as to when her FMLA allotted leave

###### 2.    *Interference Claim*

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA] right provided . . . ." 29 U.S.C. § 2615(a)(1). To establish a prima facie case of FMLA interference, Ashby must show that: "(1) [she] was an eligible employee; (2) [Amscan] was an employer as defined under the FMLA; (3) [she] was entitled to leave under the FMLA; (4) [she] gave the employer notice of her intention to take leave; and (5) [Amscan] denied the employee FMLA benefits to which she was entitled." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 840 (6th Cir. 2012) (citing *Grace v. USCAR & Bartech Tech. Servs.*, 521 F.3d 655, 669 (6th Cir. 2008)). While federal law provides a cause of action against employers for interference with FMLA benefits, it "provides no relief unless the employee has been prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (discussing 29 U.S.C. § 2617). There is no dispute that Ashby satisfies the first four elements outlined above.

With respect to the fifth element, Ashby contends that Amscan interfered with her FMLA rights by failing to advise her of her substantive rights and this failure ultimately led to her termination.[5] (Pl.'s Cross Mot. Summ. J. 13). "The Sixth Circuit has held that such allegations

---

would end. The Court agrees with Amscan. There is no support in the record for the contention that Amscan's intent was to purposefully mislead Ashby so that she would not return to work when her FMLA leave expired. *See Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308 (6th Cir. 2016) ("A plaintiff proceeding under a retaliation theory must show discriminatory or retaliatory intent . . . ." (citing *Seeger*, 681 F.3d at 282)). Beyond Ashby's mere speculation, she has cited no evidence in the record to support this contention. *See Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995) ("[S]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

[5] Amscan answers that Ashby cannot prove interference because she "received all twelve weeks of leave" to which she was entitled. (Def.'s Mot. Summ. J. 11). Ashby does not dispute that she received all of her leave; however, failing to reinstate the employee to her pre-leave position can also constitute interference with the employee's FMLA rights. *See Killian v. Yorozu Auto. Tenn.*

are sufficient to sustain an interference claim." *Fisher v. Rizzo Bros. Painting Contractors*, 403

F. Supp. 2d 593, 599 (E.D. Ky. 2005) (citing *Arban v. West Publ'g Corp.*, 345 F.3d 390, 401

(6th Cir. 2003); *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 454 (6th Cir.

2005)).  As a sister court has noted:

> When a request for leave is made, the FMLA requires three specific notices:  (1)
> the Eligibility Notice, which must be provided, absent extenuating circumstances,
> within five business days of an employee request for FMLA leave or an employer
> acquiring knowledge that an employee's leave may be for an FMLA–qualifying
> issue; (2) a Rights and Responsibilities Notice, explaining the specific
> expectations and obligations of the employee and explaining of the consequences
> of a failure to meet the obligations; and (3) a Designation Notice, informing the
> employee, within five days, when the employer has enough information to
> determine whether leave is FMLA eligible that the leave will be designated and
> counted as FMLA leave.  Under 29 CFR § 825.300(e) *Failure to follow the notice
> requirements set forth in this section may constitute an interference with an
> employee's FMLA rights.*

*Mikan v. Arbors at Fairlawn Care, LLC*, No. 5:15 CV 250, 2016 WL 5463056, at *6 (N.D. Ohio

Sept. 29, 2016) (internal quotation marks omitted) (emphasis added) (internal citation omitted)

(quoting 29 C.F.R. § 825.300(e)).  The Designation Notice requires that "the employer [] notify

the employee of the number of hours, days, or weeks that will be counted against the employee's

FMLA leave entitlement . . . ."  29 C.F.R. § 825.300(d)(6).  This notice may be written or oral,

but if the notice is oral, then it "shall be confirmed in writing, no later than the following payday

. . . ."  *Id*.  "In short, employees are entitled to protections under the FMLA and employers must

make them aware of such protections so they can meaningfully choose to exercise their FMLA

rights."  *Ross v. Youth Consultation Serv., Inc.*, No. CV2142229KSHCLW, 2016 WL 7476352,

at *3 (D.N.J. Dec. 29, 2016).

---

*Inc.*, 454 F.3d 549, 556 (6th Cir. 2006) ("Finally, by terminating [the plaintiff], [the employer]
undoubtedly interfered with her rights under the FMLA.").  In this case, not only was Ashby not
reinstated to her same position, but she was terminated from her job.

There is no dispute that Amscan failed to provide Ashby with the required notice with respect to her 2015 FMLA leave.  Amscan did not provide Ashby with any information after she sent in her FMLA certification for the 2015 leave or after she called to extend her FMLA leave two additional weeks through the end of April.[6]  *See* 29 C.F.R. § 825.300(d)(5) ("If the information provided by the employer to the employee in the designation notice changes (e.g., the employee exhausts the FMLA leave entitlement), the employer shall provide, within five business days of receipt of the employee's first notice of need for leave subsequent to any change, written notice of the change.").  "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason *unrelated* to the exercise of FMLA rights for engaging in the challenged conduct."  *Edgar*, 443 F.3d 507 (emphasis added) (citing *Arban*, 345 F.3d at 401).  Amscan argues that Ashby's interference claim cannot stand because "[t]he failure to return to work after exhaustion of FMLA leave is a permissible reason to terminate an employee's employment."  (Def.'s Reply 6).  Contrary to Amscan's contention, however, the Sixth Circuit has held "when [] absences and cause for discharge *relate directly to*

---

[6] Amscan argues that Ashby was not entitled to notice that she exhausted her leave because Ashby never filed a written request for an extension of her FMLA leave and therefore was not "approved."  The FMLA, however, does not require a written request by an employee for an extension of FMLA time.  *See Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999) (notice is sufficient when the employee "gives the employer enough information for the employer to reasonably conclude that an [FMLA qualifying event] has occurred."  (citing *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)); *see also Stimpson v. United Parcel Serv.*, 351 F. App'x 42, 47 (6th Cir. 2009) (holding that employee informing employer of injuries through a phone call was sufficient to give employer notice of his intent to use FMLA leave).  Ashby gave written notice of her intent to use her FMLA leave.  (FMLA Certification II).  Amscan was sufficiently apprised of Ashby's extension of her FMLA time through Ashby's phone call advising of the need for two more weeks off.  *See Brohm*, 149 F.3d at 523 ("[T]he critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition."  (internal quotation marks omitted) (quoting *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir. 1995))).  Thus, the fact that Ashby did not submit a written notice for the extension of her leave does not excuse Amscan's lack of notice for the leave, which began in March 2015, or the requested extension in mid-April.

*the FMLA leave and the company's failure to give notice*, . . . there is no legitimate and independent reason for dismissal." *Wallace v. FedEx Corp.*, 764 F.3d 571, 589 (6th Cir. 2014) (emphasis added).

Ashby's failure to return to work upon exhaustion of her FMLA leave in April 2015 relates directly to Amscan's failure to give notice.[7] *See id.* ("[Plaintiff's] failure to report for work—and her subsequent termination—is a direct result of failing to perfect her FMLA leave, which is a consequence of [defendant] failing to meet its responsibilities under § 825.305."). This is not a situation where Amscan had pre-leave reasons to terminate Ashby. Instead, her termination relates directly to the FMLA leave and Amscan's failure to give the required notice is "intimately intertwined" with Ashby's termination. *Id.* Therefore, Amscan's argument that it had a legitimate and *independent* reason to terminate Ashby is rejected.[8] *See Arban*, 345 F.3d at 401 ("An employee lawfully may be dismissed . . . but *only if* the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." (emphasis added) (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998))).

Amscan next argues that even if Ashby has shown interference with her FMLA rights, she has not shown that she suffered prejudiced from this interference. "An employer's failure to comply with the notice requirements of the FMLA only supports a cause of action where the

---

[7] Because Amscan elected to use the rolling method for calculating FMLA leave, the amount of leave available to an employee when an FMLA leave request is initially granted may be different than the amount available when an employee requests additional leave at a later date.

[8] The parties spend much time arguing whether Amscan should be equitably estopped from arguing that Ashby's interference claim fails because she was terminated after she exhausted her FMLA time, and therefore was no longer protected by the statute. As discussed, the Sixth Circuit has held that where an employee's termination is "intimately intertwined" with the employer's failure to give notice, the employer cannot rely on the employee's exhaustion of her FMLA leave as a legitimate reason for a termination. *See Wallace*, 764 F.3d at 589. Having concluded that Ashby may have a viable interference claim, it is unnecessary to consider equitable estoppel.

inadequate notice effectively interfere[s] with the plaintiff's statutory rights." *Fink v. Ohio Health Corp.*, 139 F. App'x 667, 671 (6th Cir. 2005) (alteration in original) (internal quotation marks omitted) (citation omitted); *see also Ragsdale*, 535 U.S. at 89 (noting that 29 U.S.C. § 2617 "provides no relief unless the employee has been prejudiced by the violation."); *Wallace*, 764 F.3d at 589 ("[A]n employee must demonstrate that an employer's failure to follow the FMLA and its regulations caused her harm.").

Ashby contends that she was prejudiced by Amscan's failure to properly inform her of her rights under the FMLA because, given proper notice and an accounting of her FMLA time, "she would have requested an earlier follow up appointment from her physician to be cleared to return to work sooner." (Pl.'s Reply Cross Mot. for Summ. J. 5, DN 27; Ashby Dep. 48:14-18, 55:23-56:7). Ashby testified that she would have returned to work if she had been properly informed of her rights under the FMLA. (Ashby Dep. 48:14-18).

Ashby further testified that had she known when her FMLA leave expired, she would have moved her doctor's appointment to get cleared to return to work sooner. (Ashby Dep. 55:23-56:4). Ashby's testimony in this regard has created a genuine issue of material fact as to whether she could have returned to work four days earlier if she had been given the proper notice required under the FMLA. The Court recognizes that Ashby's evidence may be self-serving, yet it is evidence nonetheless. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) ("A court may not disregard evidence merely because it serves the interests of the party introducing it." (citing *Niemi v. NHK Spring Co*., 543 F.3d 294, 300 (6th Cir. 2008))); *see also Churchwell v. Bluegrass Marine, Inc*., 444 F.3d 898, 904 (6th Cir. 2006) ("Plaintiff's testimony creates sufficient evidence to create a genuine issue of material facts . . . .")

19

Moreover, Amscan has not offered evidence that Ashby was medically unable to resume her position when the FMLA leave expired, instead of four days later.  The Supreme Court has held that prejudice was not shown where an individual could not have returned to work upon expiration of FMLA leave, due to their medical condition.  *See Ragsdale*, 535 U.S. at 82 (holding that the plaintiff did not show she was prejudiced by the lack of notice because her physician did not clear her to work *until long after* her FMLA ended); *see also Tippens v. Airnet Sys., Inc.*, No. 2:05-cv-421, 2007 WL 1026954 at *7 (S.D. Ohio Mar. 30, 2007) (holding that the plaintiff could not show prejudice from lack of notice because she could not have returned to work before her FMLA leave ended, even if she had proper notice, because plaintiff's FMLA leave ended on December 3 and she was in a coma until December 9).

Ashby was not cleared to return to work by her physician until April 28, 2015, four days after her FMLA leave expired.  The Court finds that unlike the plaintiff in *Ragsdale*, a reasonable jury could find that Ashby could have returned to work four days sooner, even though she was not cleared to return to work until April 28, 2015.  Ashby's physician originally gave a return to work date of April 13, 2015.  (FMLA Certification II).  After a follow-up visit extended her time off for two weeks, Ashby was cleared to return to work on April 28, 2015, only four days after her FMLA leave ended.  (Return to Work Note).  Considering the relatively minor nature of Ashby's ankle injury and the amount of recuperation already attained, it appears a jury could believe that Ashby's medical condition would not have precluded her from returning to work a few days earlier, as she claims.

Notably, there is no testimony from Ashby's physician in the record indicating that she could not have returned to four days earlier.  *See Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 476 F. Supp. 2d 675, 694 (E.D. Mich. 2007) ("There is no testimony from her

physicians, apparently because their depositions were not taken.  Had the defendants deposed the plaintiff's doctor . . . perhaps they would have such evidence and be entitled to summary judgment.  However, there is currently contradicted sworn testimony that the plaintiff would have returned to work prior to the expiration of her available leave had the defendants not misled her about her rights under the FMLA.").  Therefore, a genuine issue of material fact exists regarding whether Ashy could have returned to work when her FMLA leave expired.

Amscan further argues that Ashby was not prejudiced by its failure to give notice because she received notice of her FMLA absentee count in February 2015, a month before she took the 2015 FMLA leave.  Amscan argues that because she was on notice of her FMLA leave status in February, she was not prejudiced by Amscan's failure to give notice of these days again in March when she requested leave.  (Def.'s Reply 8).  Ashby admits that she did receive the tally of her FMLA days used up until February 2015, but was not aware that the 2014 FMLA leave was combined with the 2015 FMLA leave.  A reasonable jury could find that if Ashby had been given proper notice related to the second FMLA leave request in March 2015, she would have understood the FMLA calculation used by Amscan.  *See Cooper v. Perfect Equip.*, *Inc.*, No. 3:13-CV-1023, 2015 WL 1097344, at *9 (M.D. Tenn. Mar. 11, 2015) (holding that because the employer was aware of a discrepancy between the number of days off the physician estimated and the employee's request which exceeded FMLA leave time, the court concluded "a reasonable jury could find that the company interfered with her rights by terminating her during her requested FMLA leave period and/or by failing to inquire further regarding the duration of her request for leave . . . .").

It is not the Court's job at the summary judgment stage to weigh this evidence.  *Rogers v. Lilly*, 292 F. App'x 423, 426 (6th Cir. 2008) (citation omitted) ("In ruling on a motion for

summary judgment, '[t]he judge may not make credibility determinations or weigh the evidence." (internal quotation marks omitted) (quoting *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994))). Viewing the evidence in the light most favorable to Ashby, a reasonable jury could find that Ashby did suffer prejudice from the lack of notice with respect to her 2015 FMLA leave for her broken ankle. Therefore, Amscan's motion for summary judgment as to the interference claim is denied. Tipping the scales in the other direction to address Ashby's summary judgment motion, a reasonable jury could find that Ashby was not prejudiced by the lack of notice and reject her claim that she could have returned to work. Therefore, Ashby's motion for summary judgment as to the interference claim is likewise denied as genuine issues of fact exist.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (DN 20) is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Cross-Motion for Summary Judgment (DN 25) is **DENIED**. Plaintiff's state-law disability claims and her Family and Medical Leave Act retaliation claim are dismissed, and this matter will proceed to trial on Plaintiff's Family and Medical Leave Act interference claims.

**Greg N. Stivers, Judge**
**United States District Court**
March 8, 2017

cc:    counsel of record

22